**Susan M. BEITMAN, Petitioner,**

**v.**

**DEPARTMENT OF LABOR AND INDUSTRY, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Dec. 6, 1995.

Decided May 10, 1996.

Keith E. Kendall, for Petitioner.

Robert C. Scharnberger, Assistant Counsel, for Respondent.

Harry R. Harmon and Thomas R. Davies, for Intervenor, M & M/Mars, Inc..

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

DOYLE, Judge.

Susan M. Beitman appeals from a decision of the Pennsylvania Department of Labor and Industry, which denied Petitioner's complaint against her former employer, M & M/Mars, Inc. (Employer). In the complaint, Beitman requested the Department's Bureau of Labor Standards[1] to direct Employer to allow Petitioner's designated agent to inspect her personnel file pursuant to Section 2 of the Personnel Files Act (Act), 43 P.S. § 1322.

The underlying facts are as follows. Employer terminated Beitman in June of 1992. Over two years later, on December 14, 1994, Beitman requested, through her counsel, permission from Employer to inspect her personnel file in order to determine the reason for her separation from employment. Employer denied the request on the grounds that Beitman did not qualify as an "employee" within the definition of Sections 1 and 2 of the Act, 43 P.S. §§ 1321–22.

By letter dated January 9, 1995, Beitman filed a complaint with the Department requesting the Bureau to permit her or her designated agent to inspect her personnel file pursuant to Section 2 of the Act. The Director of the Bureau, Helen R. Friedman, responded by a letter dated January 13, 1995, denying Beitman's request on the basis that the Act does not apply to former employees, only current employees. It is from this decision that Beitman now appeals.

■ This case presents an issue of first impression: whether the definition of "employee" in the Act includes employees who have been terminated prior to any request to inspect their personnel file.

The pertinent sections of the Act provide in relevant part:

An employer shall ... upon request of **an employee** permit that employee or an agent designated by the employee to inspect his or her own personnel files used to determine his or her own qualifications for employment, promotion, additional compensation, termination or disciplinary action....

43 P.S. § 1322 (emphasis added).

**"Employee." Any person currently employed, laid off with reemployment rights or on leave of absence.** The term "employee" shall not include applicants for employment or any other person.

43 P.S. § 1321 (emphasis added).

On appeal, Beitman argues that the legislative intent underlying the Act is to permit former employees to inspect their personnel files. As support for her argument, Beitman relies upon the language in Section 1 of the Act, 43 P.S. § 1322, which permits inspection by an employee "to determine his or her own qualifications for ... *termination* or disciplinary action." 43 P.S. § 1322 (emphasis added). Beitman contends that the legislature would not have included the phrase "termination or disciplinary action" in Section 2 of the Act if it had not intended to permit an individual who has been discharged from reviewing his or her personnel file after the employment has ended. Beitman argues that to interpret the Act any other way would render the phrase "termination or disciplinary action" mere surplusage.[2]

---

1. The Department's Bureau of Labor Standards is granted authority to issue such orders under Section 4 of the Act:

    The Bureau of Labor Standards ... is hereby authorized and directed to enforce the provisions of this act, and upon a petition and hearing by either an employer or employee, to make and enforce such orders as the bureau shall deem appropriate to which order will provide access to said records....

    Section 4 of the Personnel Files Act, Act of November 26, 1978, P.L. 1212, *as amended*, 43 P.S. §§ 1324.

2. Beitman also contends that this Court in *Lafayette College v. Department of Labor and Industry, Bureau of Labor Standards*, 118 Pa.Cmwlth. 11, 546 A.2d 126 (1988), *petition for allowance of appeal denied*, 521 Pa. 632, 558 A.2d 533 (1989), permitted a former employee to inspect his personnel file. However, that case is not dispositive because in *Lafayette College*, the employee requested access to his personnel file **before** his termination date.

Beitman also argues that a personnel file would be a discoverable document in a lawsuit pursuant to Section 4 of the Act, 43 P.S. § 1324,[3] and therefore, to require a discharged individual, who believes he or she may have a claim against his or her former employer, to file suit prior to accessing the documents to establish whether a cause of action exists, contravenes judicial economy, and may leave the employee open to sanctions for filing a frivolous lawsuit.

The Department contends that it is clear that the right to inspect one's own personnel file is only afforded to "employees," which is unambiguously defined in Section 1 of the Act, and Beitman does not fall within that definition of "employee." We agree.

Section 3 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b) states: "When the words of a statute are clear and free from all ambiguity, the letter is not to be disregarded under the pretext of pursuing its spirit." *See Zimmerman v. O'Bannon,* 497 Pa. 551, 442 A.2d 674 (1982).

Section 1 of the Act unambiguously defines "employee" as including only those individuals who are "currently employed, laid off with reemployment rights or on a leave of absence. The term 'employee' shall not include applicants for employment or *any other person.*" 43 P.S. § 1321 (emphasis added). The statute specifically enumerates three categories of persons who may inspect their files, and is perfectly clear that only persons within those three categories are permitted such access. "Any other person" includes all those persons not within the three specific categories. Moreover, had the legislature intended to encompass ex-employees in the definition of "employee," it would have specifically included them in the definition.

■ Beitman contends that the definition of "employee" in Section 1 of the Act is inconsistent with the phrase "termination or disciplinary action" in Section 2 of the Act. First, there are circumstances in which an employee will be notified of his or her imminent termination, but will still be employed, so as to permit him or her to inspect the personnel records. *See, e.g., Lafayette College* (employee, who was denied tenure which meant that he would be discharged at the end of his employment contract, was permitted access to his personnel file while still employed to ascertain why tenure was denied). Second, and more important, this Court does not interpret the phrase "currently employed" in Section 1 of the Act so stringently as to prohibit an individual from obtaining his or her personnel file when such request is made contemporaneously with termination or within a reasonable time immediately following termination.

Here, though, Beitman made her request almost two and one-half years after her termination. Clearly, Beitman was not an "employee," that is, "currently employed, laid off with reemployment rights or on a leave of absence" even under the broadest interpretation of "currently employed." Therefore, we conclude that Employer is not obligated to provide Beitman with access to her personnel files.

■ Beitman also argued that it is against public policy to force a former employee to file suit before he or she can obtain his or her personnel file. This Court, however, is bound by the express and unambiguous language of the statute, and we cannot decide this case based upon our concept of public policy when the General Assembly has clearly established a contrary public policy by statute. *See Daugherty v. Continental Can Company, Inc.,* 226 Pa. Superior Ct. 342, 313 A.2d 276 (1973) (where the language of a statute is unambiguous, a court has no reason to be considered with the legislative intent).

Accordingly, we affirm the decision of the Department.

### ORDER

Now, May 10, 1996, the decision of the Department of Labor and Industry in the above-captioned matter is hereby affirmed.

---

**3.** Section 4 of the Act provides in relevant part that: "Nothing in this Act shall diminish any rights to discovery under the rules of the court of Pennsylvania." 43 P.S. §. 1324.

FRIEDMAN, Judge, dissenting.

Because I believe that Susan M. Beitman (Beitman) qualifies as an "employee" within the meaning of sections 1 and 2 of the Personnel Files Act (Act),[1] I respectfully dissent.

According to section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921, the object of all statutory interpretation is to ascertain the intent of the legislature and to give effect to all the provisions of a statute, if possible. However, where the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

The Majority concludes here that section 1 of the Act "unambiguously defines 'employee' as including **only** those individuals who are 'currently employed, laid off with reemployment rights or on leave of absence. The term "employee" shall not include applicants for employment or *any other person.*' " (Majority op. at 1302 (citing 43 P.S. § 1321))(emphasis in original). Thus, according to the Majority, the statute is "perfectly clear" that only those three categories of persons enumerated in section 1 are permitted access to their personnel files; all other persons not within one of those three specific categories are denied such access. (Majority op. at 1302.)

I cannot agree, however, that section 1 of the Act is unambiguous. An ambiguity exists "if reasonable persons can find different meanings in a statute ...; when good arguments can be made for either of two contrary positions as to a meaning of a term in a document...." BLACK'S LAW DICTIONARY 52 (Abridged 6th ed.1991). Here, although the Majority's interpretation is not unreasonable, a reasonable person could argue, quite plausibly, that the term "employee," as defined in section 1 of the Act, includes former, as well as current, employees. Nowhere are former employees specifically

excluded from the definition of "employee," nor is it readily apparent, upon close reading of the statute, that "any other person" encompasses terminated former employees. In fact, the category of persons excluded from the scope of the Act appears to be limited to those who have *never been* employees, i.e., those who would have no interest in a "personnel record," rather than those who are *no longer* employees, i.e., those who would have quite a significant interest in their personnel record. Certainly, applicants for employment would fall under the category of those who have *never been* employees. Under the rules of statutory construction, general words must be construed to take their meanings from, and be restricted by, preceding particular words. 1 Pa.C.S. § 1903(b). Therefore, "any other person" should be read to fall under the penumbra of those who have *never been* employees as well.

Further support for this conclusion is found in section 2 of the Act, 43 P.S. § 1322, which, as Beitman points out, requires an employer to permit an employee to review his or her personnel file to determine, among other things, his or her qualifications for termination: [2]

An employer shall, at reasonable times, upon request of an employee permit that employee or an agent designated by the employee to inspect his or her own personnel files used to determine his or her own qualifications for employment, promotion, additional compensation, *termination or disciplinary action.*

43 P.S. § 1322 (emphasis added). Despite this language, the Majority asserts that section 2 is consistent with a definition of "employee" that excludes terminated workers. First, the Majority contends that there are circumstances in which an employee will be notified of his or her imminent termination while still employed, so as to permit him or her to inspect the personnel records. Sec-

**1.** Act of November 26, 1978, P.L. 1212, *as amended,* 43 P.S. §§ 1321, 1322.

**2.** Petitioner points to the language in section 2 as evidence that the legislature intended former, as well as current, employees to have the right to review their personnel files under the Act. Petitioner contends that the legislature would not

have included the phrase "termination or disciplinary action" in the language of the Act if it had not intended to allow an individual who has been discharged to review his or her personnel file; any other interpretation would render section 2 mere surplusage. I agree.

ond, the Majority states that "this Court does not interpret the phrase 'currently employed' in Section 1 of the Act so stringently as to prohibit an individual from obtaining his or her personnel file when such request is made contemporaneously with termination or within a reasonable time immediately following termination." [3] (Majority's op. at 1302.)

I cannot agree with the Majority's narrow reading of section 2. The section merely states that an employee is entitled to examine her personnel file to establish the reasons for her termination. Although the Majority is correct that there are situations where an employee may know of her termination while still currently employed and may, thus, avail herself of the benefits of the Act, undoubtedly, the more common situation involves termination of an employee without advance notice. In all such situations, according to the Majority's position, the terminated employee, no longer a "current" employee under section 1, would lose any right under section 2 to examine her personnel file for the purpose of determining "his or her own qualifications for ... termination...." 43 P.S. § 1322. Therefore, for all practical intents and purposes, the Majority's interpretation of section 1 renders the protections of section 2 meaningless; the "unambiguous" language of section 1 would allow an employer to circumvent the protections of section 2 of the Act simply by firing an employee without prior notice.[4]

3. Because Beitman made the request to inspect her personnel file over two years after her termination, the Majority concludes that, even under the broadest interpretation of "currently employed," Beitman is not an "employee" within the meaning of the Act; therefore, the Majority holds that Beitman's former employer, M & M/Mars, Inc., is under no obligation to provide Beitman with access to her personnel files.

4. Termination would act as a complete bar to any substantive rights the employee would have otherwise had under the Act.

Apparently recognizing the unreasonableness of such a result, the Majority draws an unfounded and arbitrary distinction between recent former employees and not-so-recent former employees, noting that the former are entitled to inspect their personnel files "within a *reasonable* time immediately following termination," (Majority's op. at 1302)(emphasis added), while the latter are not.

Certainly, absent explicit language, the legislature could not have intended such a result. Quite the opposite, in construing the language of a statute, a court must assume that the legislature intended every word of the statute to have effect. 1 Pa.C.S. § 1921(a); *Southeastern Pennsylvania Transportation Authority v. Weiner*, 56 Pa. Cmwlth. 104, 426 A.2d 191 (1981). Accordingly, a construction which fails to give effect to all of the provisions of a statute or which achieves an absurd or unreasonable result must be avoided. 1 Pa.C.S. § 1922; *Wilson v. Central Penn Industries, Inc.*, 306 Pa. Superior Ct. 146, 452 A.2d 257 (1982). Here, when construed in light of, and with reference to, each other, sections 1 and 2 of the Act are ambiguous and inconsistent; therefore, I believe that it is proper for this court to consider the intent of the legislature in enacting these provisions. In doing so, the court should consider, among other matters, the occasion and necessity for the statute, the mischief to be remedied, the object to be attained, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c).

Here, the Act is necessitated by an important public policy aimed at safeguarding the employment rights of individuals. In order to accomplish its goal, the Act guarantees individuals freedom of access to the contents of their personnel file that may have a bearing on their employment relationship.[5]

I fail to understand, however, how the Majority, according to its very own reasoning, can make such a distinction without doing exactly what it said it cannot do, i.e., "decide this case based upon [its] concept of public policy." (Majority op. at 1302.) Following the Majority's rationale, if section 1 of the Act defines an "employee" to exclude former employees, then section 2 of the Act, which defines the rights of "employees" under the Act, cannot, by definition, afford any protection to former employees, no matter how recent their termination.

5. Although the employee's access is not unlimited, she may examine any of the following items maintained by the employer: "any application for employment, wage or salary information, notices of commendations, warning or discipline, authorization for a deduction or withholding of pay, fringe benefit information, leave records, employment history with the employer, including salary information, job title, dates of changes, retirement record, attendance records and performance evaluations." 43 P.S. § 1321.

Without this right of inspection, an employee would have virtually no way of correcting errors in her file, asserting and enforcing her rights to promotion, compensation, and the like, or protecting herself from improper or illegal termination. Indeed, an individual's employment rights are most in jeopardy, and, consequently, most in need of protection, in the event of termination. It would, therefore, be nonsensical for the legislature to exclude from the scope of the Act those most in need of its guarantees.

Accordingly, I would hold that an "employee," as defined in sections 1 and 2 of the Act, includes former employees who have been terminated prior to requesting to inspect their personnel file.

McGINLEY and SMITH JJ., join in this dissent.