**Amitha NANAYAKKARA, Appellant,**

v.

**Vito CASELLA.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 12, 1996.

Decided Aug. 21, 1996.

---

Amitha Nanayakkara, Appellant, Pro Se.

Victoria S. Freimuth, Assistant Counsel, for Department of Corrections.

Before COLINS, President Judge, and PELLEGRINI, J., and KELTON, Senior Judge.

PELLEGRINI, Judge.

Amitha Nanayakkara (Nanayakkara) appeals from the January 4, 1996 order of the Court of Common Pleas of Wayne County (trial court), denying his petition for writ of mandamus.

Nanayakkara is a prisoner at the State Correctional Institution at Waymart (Waymart). On November 19, 1995,[1] he submitted a written request to the Waymart Records Officer, Vito Casella (Records Officer), to examine his "inmate records"[2] for the purpose of preparing a civil suit in federal court against certain Department officials. In response, the Records Officer denied Nanayakkara's request and notified him in writing that he "must obtain a court order for this info[rmation]".

▮ Upon the denial of his request to inspect his records, Nanayakkara filed in the trial court a writ of mandamus, contending that he was entitled to such information under what is commonly known as the Right–to–Know Act, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1—66.4. The trial court denied and dismissed Nanayakkara's petition for writ of mandamus because of his failure to comply with the internal operating procedures of the Department and because

---

1. Nanayakkara's request was made on November 19, 1995. We do not know either the mailing date or when the Department of Corrections' (Department) denial was made. Nanayakkara's suit was filed January 3, 1996. Though the issue of whether Nanayakkara met the statutory appeal limit was not raised, if the denial's mailing date was over one month before January 3, 1996, the appeal would have been out of time.

2. While Nanayakkara's request did not give any specificity as to the type of records he is request-

ing, in his brief, he describes the types of records maintained by the Records Officer as including: DC–14, DC–15, 13A reports, psychological evaluations, results of psychological testing, job and staffing evaluations. The Department, in its brief, claims that the information requested by Nanayakkara included all information that had been provided to the Parole Board (Board) regarding Nanayakkara's treatment, along with other investigative information such as psychological, staffing and job evaluations.

of his failure to exhaust his administrative remedies.[3] This appeal followed.[4]

■ Nanayakkara contends that he is entitled access to his inmate records under the Right-to-Know Act. The Right-to-Know Act provides the same right of access to an agency's public records to every citizen of Pennsylvania. Section 2 of that Act provides that "Every public record of any agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." 65 P.S. § 66.2. A prisoner making a request for his "inmate records" under the Right-to-Know Act is not granted any special access merely because he or she is the subject of the records. Rather, his right to those records is not more or less than that of any Pennsylvania citizen. The issue then is whether any citizen of Pennsylvania has the right to view the entire set of "inmate records" of a prisoner in a state correctional institution.[5]

The outcome of that issue is determined by whether the documents are "public records" under the Right-to-Know Act. A document is a "public record" if it is:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use of disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons . . .

65 P.S. § 66.1(2).

If the document is a public record, the agency must give access to that document unless it falls within one of the enumerated exceptions set forth under the Act.[6]

■ For the agency to be required to give access, a person who makes a public records

3. The trial court dismissed Nanayakkara's appeal without preliminary objections from the Department and did not denominate what internal administrative remedies Nanayakkara failed to exhaust. Initially, both Nanayakkara and the Department agree that Nanayakkara should not have filed a writ of mandamus in the trial court. Though the Department does not contend that Nanayakkara failed to exhaust his internal administrative remedies, it does contend that the action was improperly filed in the court of common pleas when it is within our appellate jurisdiction. Section 5103 of the Judicial Code, 42 Pa.C.S. § 5103, works in conjunction with Section 708(d) of the Judicial Code, 42 Pa.C.S. § 708(b), to provide that improvident appeals taken from an agency determination to a court shall not be dismissed solely because of that error, but rather, shall be transferred to the proper tribunal or agency; that tribunal or agency will treat the matter as if filed on the date it was filed with the court. *St. Clair v. Pennsylvania Board of Probation and Parole,* 89 Pa. Cmwlth. 561, 493 A.2d 146 (1985). Nanayakkara's complaint should have been brought as a petition for review in our appellate jurisdiction under 42 Pa.C.S. § 763(a)(1).

4. Our scope of review of a decision under the Right-to-Know Act is limited to a determination of whether the grant or denial of an appellant's request for information was for just and proper cause. *City of Chester v. Getek,* 132 Pa.Cmwlth. 394, 572 A.2d 1319 (1990).

5. Nanayakkara's broad request was for his "inmate records". Those records include all information obtained about Nanayakkara since his incarceration. In considering what rights citizens have to view personnel files, we have held

that a teacher's personnel file maintained by a school district does not constitute a public record for purposes of the Right-to-Know Act. *West Shore School District v. Homick,* 23 Pa.Cmwlth. 615, 353 A.2d 93 (1976). Moreover, though an employee has the right to view his own personnel file under what is commonly known as the Personnel Files Act, Act of November 26, 1978, P.L. 1212, *as amended,* 43 P.S. § 1322, an ex-employee does not have that right. *Beitman v. Department of Labor and Industry,* 675 A.2d 1300 (Pa. Cmwlth.1996). Applying these holdings, if an employee's right to view his or her own personnel file is limited, clearly the right of a prison inmate to view his or her own file may likewise be limited.

6. Those exceptions, also found in Section 1(2) of the Act, provide:
   > [T]he term "public records" shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions of State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

request has an obligation to identify with some specificity the type of information being sought. That information must fall within the definition of a public record. A request for "inmate records" is not sufficiently specific so that the agency can determine whether to grant or deny the request. For example, any inmate psychological profiles are not public records, while any account of public funds to maintain the inmate would be. Because Nanayakkara's request does not request a "public record" because it does not provide additional facts from which we could determine what type of records he is requesting, the Department need not comply with that request.[7] Moreover, such lack of specificity makes it difficult, if not impossible, for us to conduct meaningful review of whether any part of the request could constitute "public records".[8]

Accordingly, the decision of the Department denying Nanayakkara access to those records is affirmed and Nanayakkara's appeal is dismissed.

### ORDER

AND NOW, this 21st day of August, 1996, the order of the Court of Common Pleas of Wayne County, dated January 4, 1996, is affirmed and Nanayakkara's appeal is dismissed.

---

7. In his reply brief, Nanayakkara contends that his request for "inmate records" was specifically directed to the Records Officer and was limited to his DC–14 file—which he now claims to be the only file maintained by the Records Officer at the prison. Ignoring that, in his original brief, Nanayakkara included in the description of the files held by the Records Officer not only the DC–14, but also DC–15, 13A reports, psychological evaluations, results of psychological testing, job and staffing evaluations, even if his request were limited to the DC–14 file, our result in this case would not change. A general request for "inmate records" such as that made by Nanayakkara is not sufficiently specific as to indicate a request for public documents under the Right–to–Know Act.

8. If we accept the Department's representation that the "inmate record" of Nanayakkara consists of psychological, staffing and job evaluations made to complete Nanayakkara's suit against certain Department officials with regard to his parole consideration, the request would

not constitute a request for "public records" under the Right–to–Know Act. In *Senk v. Board of Pardons*, 104 Pa.Cmwlth. 270, 521 A.2d 532 (1987), noting that there is no constitutional right of a convicted person to be released prior to the expiration of a valid sentence, we held that files of the Board of Pardons do not contain decisions which affect personal or property rights of any person and, as such, do not constitute "public records" for purposes of the Right–to–Know Act. Though *Senk* applied to files held by the Board of Pardons, its rationale is equally applicable to files held by the Department regarding parole considerations, since it is well settled that there is no constitutionally protected liberty interest in the expectation of being released on parole prior to the expiration of a sentence's maximum term. *Blair v. Board of Probation and Parole*, 78 Pa.Cmwlth. 41, 467 A.2d 71 (1983), *petition for writ of certiorari denied*, 466 U.S. 977, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984). Because the requested documents would not constitute "public records" under the Act, the agency need not provide access to them.